# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

**ANNTOINETTE Z. FLETCHER,**           }
                                        }
    **Plaintiff,**                   }
                                        }
v.                                      }      **Case No.: 2:07-CV-0463-RDP**
                                        }
**MICHAEL J. ASTRUE, Commissioner**     }
**of Social Security,**                 }
                                        }
    **Defendant.**                   }

## **MEMORANDUM OF DECISION**

Anntoinette Z. Fletcher brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), and seeks judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act (the "Act"). *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and the proper legal standards were applied.

### **I.  Proceedings Below**

Plaintiff filed her application for disability insurance benefits on January 13, 2003. (Tr. 62-65). Plaintiff alleges a disability onset date of May 12, 2002.[1] (Tr. 62, 69). Plaintiff's application was denied initially and also upon reconsideration. (Tr. 42-49). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 50-57). The Honorable Jerome L. Munford heard Plaintiff's case on Wednesday, March 22, 2006, in Birmingham, Alabama.

---

[1] Plaintiff admitted to the ALJ that she worked until October 12, 2002 as a manager at a Burger King restaurant. (Tr. 268).

(Tr. 235-85). In the decision dated August 8, 2006, the ALJ determined that Plaintiff was not eligible for disability insurance benefits because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform basic work-related activities for at least twelve consecutive months. (Tr. 16-39). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 11, 2007, that decision became the final decision of the Commissioner, and therefore, a proper subject of this court's review. (Tr. 4-7).

At the time of the hearing in question, Plaintiff was forty-nine years old and had received a high school education and an associate's degree in business administration. (Tr. 239-40). Plaintiff previously worked in several jobs, including periods as a manager at a convenience store and a fast-food restaurant, a telemarketer, a janitor, a security guard, and a kitchen helper in a hospital. (Tr. 36, 271-72). Plaintiff met the disability insurance benefit requirements through June 30, 2007. (Tr. 37).

Plaintiff alleges that she suffers from degenerative joint disease, chronic and severe pain in the back, shoulders and neck, post-traumatic stress disorder, depression/anxiety, panic attacks, and left-hand weakness. (Tr. 243-67). According to Plaintiff, these problems have rendered her unable to engage in substantial gainful activity since 2002. (Tr. 69). Plaintiff's medical records show that Cooper Green Hospital treated her for spontaneous left pneumothorax on May 3, 1999. At her follow-up appointment, the doctors found Plaintiff's chest x-ray to be normal and felt the pneumothorax had been resolved. (Tr. 101-107). Cooper Green Hospital treated Plaintiff again in March 2001 for chest pain and diagnosed her with gastroesophageal reflux disease. Plaintiff also had a urinary tract infection. The doctor prescribed Levaquin and discharged her. (Tr. 108-12). Plaintiff developed shoulder pain in 2003, and received physical therapy at Cooper Green Hospital,

although an x-ray revealed no abnormalities. After her pain decreased, Cooper Green Hospital discharged Plaintiff from physical therapy within two months. (Tr. 112-25).

Dr. C.B. Thuss, Jr. performed a consultive examination on Plaintiff in March 2003. Plaintiff told Dr. Thuss that, in 1971, she received a gunshot wound in her back. Dr. Thuss' tests on Plaintiff were almost entirely normal, and he diagnosed her with back pain, depression, status post hysterectomy, status post skin infection, and left spontaneous pneumothroax. (Tr. 147-51). In April 2003, Dr. Thomas Boll performed a psychological consultative examination on Plaintiff. Dr. Boll also determined Plaintiff was normal and that she functioned intellectually in the high-average range. Dr. Boll noted that Plaintiff was depressed and tearful. (Tr. 144-46). Plaintiff indicated to Dr. Boll that she normally wakes at 9:00 a.m., performs housework, reads the Bible, and sometimes cooks or shops. She manages her own finances, and her hobbies include gardening, and writing poems. (Tr. 145). Dr. Boll diagnosed Plaintiff with depressive disorder. (Tr. 146).

Plaintiff was examined in June 2003 by Janet McCrary, a nurse practitioner at Community Care Plan in Pratt City, Alabama. Ms. McCrary diagnosed Plaintiff with back pain. Plaintiff was prescribed Darvocet for pain and Prozac for depression. In August, Ms. McCrary exchanged Plaintiff's prescription of Darvocet for Tylenol #3. (Tr. 214-17). Plaintiff returned to Community Care Plan in November and complained of ear pain, menopausal symptoms, back pain, left shoulder pain, and depression. Plaintiff stated that the Tylenol #3 relieved her shoulder pain and that she was not depressed on most days. (Tr. 212). In January 2004, Plaintiff returned for a follow-up and stated that the Tylenol helped to control her pain, and the Prozac helped to keep her calm. Plaintiff's physical examination was normal. (Tr. 211). Ms. McCrary treated Plaintiff again in April 2004 for pain on the left side of her neck, into her arm, and for cramps in her left arm, side, and leg. Plaintiff

said that pain medication helped relieve her pain, but after it wore off, the pain returned. Plaintiff again complained of depression. Ms. McCrary discontinued Plaintiff's use of Tylenol #3 and prescribed her Tylenol #4. Ms. McCrary referred Plaintiff to a pain management clinic and to a psychiatrist. (Tr. 208-10).

In April 2004, Judy Prince, a counselor and social worker at Cooper Green Hospital examined Plaintiff. Ms. Prince recommended that Plaintiff participate in group therapy, and during one of these group sessions, Plaintiff met Dr. Carmichael, the staff psychiatrist. Dr. Carmichael gave Plaintiff another prescription for Prozac. (Tr. 189-90). Plaintiff admitted to consistent use of marijuana during several of these therapy sessions. (Tr. 189). In May 2004, Plaintiff went to the Cooper Green Hospital emergency room complaining of pain in her right shoulder. (Tr. 169-72). In July 2004, Ms. McCrary saw Plaintiff again, and Plaintiff complained of difficulty swallowing. Plaintiff also stated that her depression had subsided with the use of Prozac. The swallowing test results were normal. (Tr. 207). On Plaintiff's last visit to Community Care Plan, Plaintiff was treated by Dr. Sellers instead of Ms. McCrary. (Tr. 206). During this visit, Plaintiff complained of numbness in her left arm. Dr. Sellers diagnosed Plaintiff with depression, insomnia, and chronic pain. Dr. Sellers advised Plaintiff to remain on her other medications and additionally prescribed her Robaxin. (Tr. 206).

On March 14, 2006, Plaintiff was examined by Dr. Gene Saylors after being requested to do so by Plaintiff's attorney. (Tr.192-204). Dr. Saylors noted some shoulder pain, but in most aspects, his examination of Plaintiff was normal. He stated that Plaintiff had an underlying medical condition consistent with the pain that she experienced, which was mostly related to depression and alcoholic neuropathy. (Tr. 204). Plaintiff has a history of alcoholism, but stopped drinking in 2002. (Tr. 193).

Dr. Saylors completed a Clinical Assessment of Fatigue/Weakness form in which he stated that Plaintiff experienced fatigue or weakness to such an extent as to negatively affect the adequate performance of daily activities or work. (Tr. 200-204).

After the hearing with the ALJ, Dr. Stuart Waddell, a psychiatrist, examined Plaintiff on April 25, 2006, pursuant to a request from Plaintiff's attorney. Dr. Waddell stated that Plaintiff's overall mood was anxious and depressed. Dr. Waddell diagnosed Plaintiff with a history of probable past major depression and past psychotic symptoms, panic disorder with agoraphobia, a history of victim of childhood sexual and physical abuse, post traumatic stress disorder, disassociative disorder symptoms, and a history of ethanol abuse, in remission. Dr. Waddell completed a Supplemental Questionnaire as to Plaintiff's residual functional capacity and indicated she had marked to extreme impairment in her ability to respond to customary work pressures. Dr. Waddell speculated that it would be difficult for Plaintiff to find a job with such a limited amount of pressure in which she could work successfully. (Tr. 219-25).

## II.  ALJ Decision

Determination of disability, under the Social Security Act, requires a five-step analysis. *See* 20 C.F.R.§ 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether the claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity is what the claimant can do despite his impairment. Finally, the Commissioner determines whether the

5

claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found Plaintiff has not engaged in substantial gainful activity since October 12, 2002.  (Tr. 268).  Plaintiff met the disability insured status requirements of the Act through June 30, 2007.  (Tr. 37).  Based on the medical evidence presented, the ALJ concluded that Plaintiff does have the severe impairments of back pain and depression.  However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that have significantly limited (or is expected to limit) the ability to perform basic work-related activity for twelve consecutive months.  Therefore, Plaintiff does not have a severe impairment as defined by the Act.  (Tr. 38).

According to the ALJ, Plaintiff's statements concerning her impairments and their impact on her ability to work cannot be fully credited. (Tr. 30).  After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found Plaintiff has recovered from

many of the impairments that she suffered from.  The ALJ noted that many of Plaintiff's physical examinations were normal and that the limited use of medication can control Plaintiff's pain and depression.  (Tr. 31).  The ALJ stated that "it does not appear that [Plaintiff's] pain is as severe as alleged or that she would not be able to perform the exertional and non exertional requirements of all work." (Tr. 31).  The ALJ looked at the examinations from all of Plaintiff's doctors while making his decision and noted the daily activities of Plaintiff's life.  Plaintiff still is very independent and mostly able to care for herself, handle her own finances, and engage in hobbies such as gardening and attending church.  The ALJ concluded that although Plaintiff can no longer do any of her past work, she retains the residual functional capacity to perform light work, she has a high average IQ, and can occasionally bend, stoop, push, or pull from the left shoulder, and kneel.  Plaintiff can never drive, must have a temperature controlled environment, and must have a sit/stand option.  Thus, the ALJ ruled that Plaintiff is not disabled as the Act defines that term and that Plaintiff, therefore, is not entitled to a period of benefits. (Tr. 36).  *See* 20 C.F.R. §404.1520(b).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration.  (Pl.'s Mem. 10).  Plaintiff argues that substantial evidence does not support the ALJ's decision, and that it is inconsistent with applicable law because the ALJ failed to consider the Eleventh Circuit's three-part pain standard.  (Pl.'s Mem. 5).  Specifically, Plaintiff argues that in making his decision, the ALJ improperly discounted the opinions of Dr. Saylors and Dr. Waddell.  (Pl.'s Mem. 6).  Plaintiff asserts that she underwent two consultive examinations by these two doctors, and the ALJ had the duty to consider all the medical evidence of record, not just

7

selected parts. (Pl.'s Mem. 8). Plaintiff also argues that the ALJ should have given these opinions serious weight because they state her underlying medical conditions, and highlight the severity of her state, showing that her medical condition is of such severity that it can be reasonably expected to cause the alleged pain and other subjective impairments. (Pl.'s Mem. 8).

### IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in

scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V.  Discussion

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand and/or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and proper legal standards were applied.

**A.     The ALJ Properly Considered the Eleventh Circuit's Three-Part Pain Standard.**

Plaintiff's first argument is that the ALJ failed to properly consider the Eleventh Circuit's three-part pain standard that applies whenever a claimant asserts disability through testimony of pain or other subjective symptoms. (Pl's. Mem. 3). Plaintiff argues that she meets this three-part standard and contends she proved this to the ALJ by her own testimony and by corroborating evidence. Plaintiff also argues that had the ALJ properly considered the medical evidence of record, he would have found her disabled based upon her pain and psychological complaints alone. (Pl.'s Mem. 8). Defendant responds by stating that the ALJ properly evaluated the medical record, and his finding of non-disability is supported by substantial evidence. (Dft.'s Mem. 4). Defendant argues that the ALJ's evaluation of Plaintiff's daily activities provides substantial evidence that Plaintiff does not meet the burden of the three-part pain standard, and therefore, the ALJ determined properly that Plaintiff's complaints of pain were not credible. (Dft.'s Mem. 5, 12).

The Eleventh Circuit has set a standard used to assess subjective complaints of pain and other subjective symptoms. This standard of pain has three parts: (1) Evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or (3) that the objectively determined medical condition is of such

severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). This standard of pain does not require objective proof of the pain itself. *Elam v. Railroad Retirement Board*, 931 F.2d 1210, 1215 (11th Cir. 1991). In addition to this standard, the ALJ may consider some other factors that are relevant to the evaluation of symptoms. These can include: (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side-effects of any pain medication; (4) treatment, other than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's daily activities. 20 C.F.R. § 404.1529(c)(3). This court may reverse a case if there is not an indication that the ALJ properly applied the three-part pain standard in reaching his decision. *Holt*, 921 F.2d at 1223. However, should the ALJ reject a claimant's complaints of pain under the three-part standard for lack of credibility, then this court can only review that decision for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

Upon examination of the record, it is clear that the ALJ carefully considered Plaintiff's assertions of pain by using the three-part standard before making his determination. The ALJ's opinion cites details from Plaintiff's medical records as reasoning for his conclusions. While the ALJ did consider the three-part pain standard, there is no evidence to substantiate the severity of impairments that Plaintiff claims. The ALJ found that Plaintiff meets Part One of the standard and that she has the severe impairments of back pain and depression. However, the ALJ found the objective medical evidence does not support the severity of symptoms alleged by Plaintiff, and the conditions are not so severe that they would reasonably be expected to give rise to the severity of symptoms Plaintiff describes. (Tr. 38). Plaintiff alleges that back problems associated with an old

gunshot wound partially disable her. (Tr. 69). The record shows that the wound was inflicted in the early 1970's and Plaintiff has been able to hold a number of very physically demanding jobs since that time. (Tr. 84). It is inconsistent with Plaintiff's employment record to say that this wound disables her so much that she may not work. Dr. Thuss examined Plaintiff on March 17, 2003. This examination showed Plaintiff to be in overall normal health. (Tr. 147-65). Plaintiff had full range of motion in all joints and her back, gait, sensation, balance, motor strength, gross manipulation, and grip strength were all normal. Dr. Thuss did not note any muscle spasm or deformity, and Plaintiff was able to stoop, kneel, and crouch. (Tr. 147-51). In addition, the ALJ thoroughly addressed each and every impairment Plaintiff might have throughout his opinion, and discounted each one. This shows that the ALJ gave proper weight to the entire medical record, and properly applied the pain standard. (Tr. 15-25).

   Plaintiff admitted that medication adequately controlled her pain and decreased her pain sensation to that similar to a toothache. (Tr. 246). This level of pain certainly would not prevent Plaintiff from working in the national economy. Dr. Boll's examination of Plaintiff's mental status was essentially normal. She functioned intellectually in the high-average range and has never had significant or consistent mental health treatment. (Tr. 34). Plaintiff admitted that Prozac makes her depression much better. (Tr. 207). Conditions that are adequately controlled with medication are generally not considered disabling. *See Daniel v. Apfel*, 92 F.Supp.2d 1269 (11th Cir. 2000). The medical evidence in the record shows that Plaintiff can control her impairments with medication; therefore, the ALJ could not classify them as disabling. Plaintiff does not meet the second requirement of the pain standard, because the objective medical evidence does not confirm the severity of the alleged pain arising from her conditions.

According to the ALJ, Plaintiff did not meet the third requirement of the pain standard either. The ALJ concluded that the objectively determined medical condition is not of such severity that it can reasonably be expected to give rise to the alleged pain. In reaching this conclusion, the ALJ looked to Plaintiff's daily activities as proof that her condition is not severe enough to give rise to the purported pain. (Tr. 34-35). Plaintiff reported that she could basically care for herself and handle her own finances. She also reported that she still engaged in several of her hobbies, such as gardening, writing poetry, reading the Bible, and caring for her dog. (Tr. 80-83). Plaintiff is also able to do housework, cook, do laundry, and shop. Plaintiff stated that she does not require any assistance with bathing, dressing, changing her socks or shoes, dressing herself, getting in or out of bed, or driving a car. (Tr. 238-72). Additionally, Plaintiff is still able to move about to conduct daily activities. She attends therapy sessions on Wednesdays, goes to choir practice on Thursdays, church on Fridays and Sundays, and visits with her grandchildren on Saturdays. (Tr. 194). Pursuant to 20 C.F.R. § 404.1529(c)(3), an ALJ can look to daily activities to evaluate symptoms of pain. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). The ALJ looked at Plaintiff's daily activities and determined that they are inconsistent with the severity of pain alleged by her. Therefore, substantial evidence supports the finding of the ALJ.

**B.     The ALJ Properly Considered the Opinions of Dr. Gene B. Saylors and Dr. Stewart D. Waddell.**

On March 14, 2006, Dr. Gene Saylors examined Plaintiff. Dr. Saylors concluded that Plaintiff has severe depression and because of her physical impairments, Plaintiff would have significant difficulty with any job. (Tr. 192-204). On April 25, 2006, Dr. Stewart Waddell examined Plaintiff. Dr. Waddell concluded Plaintiff has suffered from depression since childhood due to her

abusive family history, and she has marked to extreme restrictions in her activities of daily living. (Tr. 222-23). Dr. Waddell surmised Plaintiff would have extreme impairments in her ability to respond to work pressures, and this limits her ability to find a job with limited pressures. (Tr. 223). Plaintiff argues the ALJ did not give the proper weight to the opinions of these doctors when reaching his decision. Plaintiff argues that if the ALJ had considered these opinions, he would be bound to find Plaintiff disabled. (Pl.'s Brief 8).

Part two of the three-part pain standard requires objective medical evidence that confirms the severity of the alleged pain arising from that condition. *Holt*, 921 F.2d at 1223. The ALJ had the discretion to reject any evidence that he found to lack credibility. The ALJ properly gave no weight to Dr. Saylors' opinion that Plaintiff would have difficulties with almost any job because of her severe mental and physical impairments. Dr. Saylors based his opinion, at least in part, on his understanding that Plaintiff was significantly limited in her abilities to stand, walk, push/pull arm and/or leg controls, climb stairs, balance, grasp, twist, handle, bend, stoop, and reach, and that she experienced moderately severe pain, fatigue, and medication side effects. (Tr. 32,198). The ALJ ruled that these restrictions are completely inconsistent with the evidence of record and Dr. Saylors' own narrative report. (Tr. 32). When Dr. Saylors examined Plaintiff, her physical examination showed no abnormality and Dr. Saylors did not diagnose Plaintiff with anything that could give rise to her alleged pain and weakness. (Tr. 33, 198). Dr. Saylors noted in his Clinical Assessment of Pain that Plaintiff's complaints of pain were mostly related to depression and alcoholic neuropathy. (Tr. 201-202). There is substantial evidence to support the ALJ's conclusion that Dr. Saylors' examination was inconsistent with his opinion, and therefore, the ALJ properly did not consider the opinion.

The ALJ also properly gave little weight to Dr. Waddell's opinion that it would be hard for Plaintiff to find a job with limited pressure. The ALJ found Dr. Waddell's opinion inconsistent with his narrative report. His report gave Plaintiff a normal mental status and stated that there was no evidence of any psychosis during the interview. (Tr. 35, 222). Dr. Waddell's report also was based primarily on the subjective complaints of Plaintiff, and most of these complaints are not consistent with Plaintiff's actual actions. Plaintiff told Dr. Waddell that she tries to avoid crowds, panics while driving, and needs assistance with her finances. (Tr. 219-21). However, only one month prior to her examination by Dr. Waddell, Plaintiff told Dr. Saylors that she left the house quite frequently to attend therapy, church, and visit with her grandchildren. (Tr. 194). Therefore, the ALJ correctly exercised his discretion to discount this opinion because of its inconsistencies with other record evidence, including Plaintiff's own testimony.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___24th___ day of June, 2008.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　**R. DAVID PROCTOR**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE